# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 18, 2002 Session

## JESSE E. ROGERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hawkins County**
**No. 7934     James Edward Beckner, Judge**

---

**No. E2001-02869-CCA-R3-PC**
**October 16, 2002**

---

The petitioner, Jesse E. Rogers, entered "best interest" guilty pleas to five counts of rape of a child. He was sentenced to twenty-five years incarceration in the Tennessee Department of Correction for each offense, with the sentences to be served concurrently. The petitioner subsequently filed for post-conviction relief. Following an evidentiary hearing, the post-conviction court denied relief and the petitioner timely appealed. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

John S. Anderson, Rogersville, Tennessee, for the appellant, Jesse E. Rogers.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Douglas Godbee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On June 5, 2000, the petitioner was indicted by the Hawkins County Grand Jury on five counts of rape of a child in violation of Tennessee Code Annotated section 39-13-522 (1997). The alleged victim was the petitioner's eight-year-old daughter. Thereafter, on October 6, 2000, the petitioner entered "best interest" guilty pleas to all five counts of rape of a child.[1] In accordance with the plea agreement, the petitioner was sentenced to twenty-five years incarceration for each count

---

[1] An accused who wishes to plead guilty yet assert his innocence may enter what is known as a "best interest" guilty plea. See North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S. Ct. 160, 167-168 (1970). A trial court may accept such a plea if the court is satisfied that there is a factual basis for the plea. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

with the sentences to be served concurrently. As a child rapist, the petitioner was required to serve one hundred percent (100 %) of his sentence in confinement.

On August 22, 2001, the petitioner filed for post-conviction relief, alleging that he received ineffective assistance of counsel. Specifically, the petitioner claimed that his trial counsel failed to file proper pre-trial motions and failed to properly investigate his case. Additionally, the petitioner alleged that his guilty pleas were not knowing or voluntary because counsel failed to advise the petitioner of the sentence he would receive if he went to trial as opposed to pleading guilty. Moreover, the petitioner claimed that he was not "in the right state of mind" to accept a plea and did not remember if he was even present at the time the pleas were entered.

The post-conviction court appointed counsel and conducted an evidentiary hearing. Following the evidentiary hearing, the post-conviction court made detailed findings and concluded that the petition was without merit. It is from this determination that the petitioner now appeals.

## II. Analysis

We begin by noting that although the petitioner cites authority addressing ineffective assistance of counsel and knowing and voluntary guilty pleas, he has failed to support his issues with argument. Accordingly, this court could consider these issues waived. See Tenn. Ct. Crim. App. R. 10(b). Nevertheless, we will address the petitioner's claims. To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is a mixed question of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). In Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citations omitted), our supreme court further explained the standard of review in cases of ineffective assistance of counsel:

> [A post-conviction] court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. However, a [post-conviction] court's *conclusions of law*--such as whether counsel's performance was deficient or whether that

deficiency was prejudicial--are reviewed under a purely *de novo* standard, with no presumption of correctness given to the [post-conviction] court's conclusions.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).  In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases.  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

At the post-conviction hearing, the petitioner called his trial counsel and counsel's investigator to testify on his behalf.  Trial counsel testified that he filed motions for discovery and discussed the State's evidence with the petitioner.  Counsel stated that he discussed possible sentences with the petitioner, including the possibility that consecutive sentences could be ordered.  Counsel met with the petitioner two or three times with the defense investigator present, and also met with the petitioner alone on a number of occasions. Counsel testified that "[the petitioner] seemed to be a reasonably intelligent man and, yes, as I recall, he didn't seem to have any problems understanding what I told him."  Counsel did not recall if he had filed a motion to suppress the petitioner's statements.

Counsel recalled that the petitioner wavered regarding whether he wanted to plead guilty or go to trial.  However, counsel testified that he had two primary concerns about going to trial.  He noted that the petitioner had made two incriminating statements and there was also damaging physical evidence.  Additionally, counsel recalled that the victim was very articulate and had provided graphic details regarding the offenses.

Lawrence Smith, the defense investigator, testified regarding the petitioner's case. Smith related that he had more than twenty-five years of experience in law enforcement and as an investigator with the public defender's office.  He has an associate's degree from Walters State Community College and had almost completed the requirements for a bachelor's degree in criminal justice at East Tennessee State University.  Smith also teaches and lectures at various colleges and at seminars relating to child abuse investigations.

Smith testified that he spent a great deal of time with the petitioner while the petitioner was incarcerated in the Hawkins County Jail.  He estimated that he met with the petitioner at least ten times.  Smith interviewed witnesses, reviewed discovery materials and lab reports, and and discussed the evidence with the petitioner.  He and the petitioner's trial counsel also discussed with the petitioner the advantages and disadvantages of going to trial or pleading guilty.  Although

the petitioner did not necessarily want to plead guilty, he did not want to go to trial. Smith explained that the petitioner was reluctant to go to trial because he did not want his daughter to have to testify. Eventually, the petitioner chose to plead guilty. Smith recalled,

> [t]his was not one of these quick decisions to enter into a plea bargain. It, certainly, was a very, very long process. We was prepared to go to trial, but [the petitioner] finally arrived at that decision to enter the plea bargain after it was explained to him the possibility of what the evidence would possibly prove against him, being the D.N.A., and all the statements, and everything. It was one of the best prepared cases that I have saw as far as the evidence, as far as corroborating statements, for his D.N.A., and, of course, very damaging statements that [the petitioner] had made to law enforcement officers.

The petitioner testified at the post-conviction hearing that he was not guilty of rape. He contended that if he was guilty of anything, it was a lesser offense. The petitioner asserted that he entered "best interest" pleas because he did not want to plead guilty, and now believes that he should have gone to trial. Although he claimed that counsel should have filed a motion to suppress his statements, the petitioner admitted that he made the statements. However, he explained, "[A]fter I reflected on it, I had no memory, or really what happened. I still don't. I can't tell you today what happened. I don't know." He alleged that he should have requested an attorney before he made the statements. The petitioner conceded that, prior to his plea, he was evaluated by mental health professionals. Moreover, despite his limited memory of the circumstances surrounding his statements, the petitioner admitted that he was aware that the State's evidence included laboratory results and DNA evidence. The petitioner presented no other evidence to support his claims of ineffective assistance.

As noted earlier, the post-conviction court found that the petitioner received effective assistance of counsel. The post-conviction court obviously accredited the testimony of trial counsel and the defense investigator rather than the testimony of petitioner. The post-conviction court concluded that counsel, with the assistance of the defense investigator, thoroughly investigated the case, talked with witnesses, consulted with the petitioner, and obtained discovery. Further, the court noted that the original court file reflected that counsel had filed several motions, including a motion for a mental evaluation of petitioner. The court asserted after reviewing the record that there "was such that a very strong case existed against the petitioner, for which he, in all likelihood, would be found guilty. He could have received up to 125 years in this case, instead of the 25 years that he did receive at 100 percent release eligibility date." Additionally, the court concluded that the petitioner had failed to show that if not for counsel's errors, he would have insisted on going to trial. Indeed, the petitioner testified that he wanted to plead guilty in order to prevent his daughter from being forced to testify at trial. The court asserted after reviewing the record that had the petitioner gone to trial rather than entering a guilty plea, "the probability is that a much worse result would have occurred."

Again, we note that the findings of fact of the post-conviction judge are afforded the weight of a jury verdict, and those findings are conclusive on appeal unless the evidence in the record preponderates otherwise. There is nothing in the record to preponderate against the conclusion of the post-conviction court that the petitioner did not meet his burden of proving ineffective assistance of counsel. This issue is without merit.

### B. Guilty Pleas

The petitioner also complains that his guilty pleas were neither knowing nor voluntary because the pleas were "[e]ntered without [the] petitioner's understanding of awareness of the important constitutional rights he was waiving by pleading guilty." Again, we observe that the petitioner has failed to support this issue with argument. Regardless, we conclude that the petitioner has failed to show that he is entitled to relief.

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244, 89 S. Ct. at 1712.

The Tennessee Supreme Court, in State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), set out the procedure trial courts in Tennessee should follow when accepting guilty pleas. Prior to accepting the guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11(c). A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The post-conviction court noted that it had reviewed the entire record, including the transcript of the guilty plea hearing. The plea transcript reflects that the trial court explained to the petitioner his constitutional rights and the consequences of pleading guilty. The trial court carefully explained to the petitioner the State's burden in proving rape of a child, specifically defining the statutory definition of penetration. The petitioner advised the court that he understood the charges against him, was entering his plea voluntarily, and was aware of the constitutional rights being relinquished. The trial court further explained to the petitioner the sentence he would receive and that he was required to serve one hundred percent (100%) of his sentence in confinement. The petitioner advised the trial court that he had completed high school, had two years of college study, and had no mental or physical conditions that limited his understanding of the proceedings.

At the post-conviction hearing, the petitioner contended that he was not "in the right state of mind to even make a plea." The post-conviction court noted that, prior to the petitioner's pleas, the petitioner had been evaluated by mental health professionals who found the petitioner competent to stand trial and who concluded that an insanity defense could not be supported. The petitioner asserted that he should have gone to trial and, at most, should have been convicted of a lesser offense. Again, the post-conviction court considered the evidence, accredited the testimony of the trial counsel and the defense investigator, and determined that the petitioner's plea "in all respects was voluntarily, intelligently, and understandably made." We conclude that the evidence does not preponderate against this determination.

### III. Conclusion

Accordingly, we affirm the judgment of the post-conviction court

_____
NORMA McGEE OGLE, JUDGE